IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CLINTON F.,                                )
                                           )
              Plaintiff,                   )
                                           )
       v.                                  )    1:22CV492
                                           )
KILOLO KIJAKAZI,                           )
Acting Commissioner of Social Security,    )
                                           )
              Defendant.                   )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Clinton F. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g), 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on July 30, 2019, alleging a disability onset date of July 1, 2016 in both applications. (Tr. at 16, 223-36.)[1] His applications were denied initially (Tr. at 56-89, 124-28) and upon reconsideration (Tr. at 90-121, 130-38). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

Law Judge ("ALJ"). (Tr. at 139-40.) On November 10, 2020, Plaintiff, along with his attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 16.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 25), and, on May 27, 2022, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date of July 1, 2016. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 18.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative joint disease of the left knee; degenerative joint disease of the right ankle with history of fracture; personality disorder; and substance abuse disorder[.]

(Tr. at 18.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 19-20.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform medium work with further limitations. Specifically, the ALJ found as follows:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is limited to simple routine tasks that can be learned by rote or short demonstration with simple instructions, few workplace changes little judgment required, and no more than occasional contact with general public and coworkers. He can lift/carry fifty pounds occasionally and twenty-five pounds frequently; stand and walk for six hours of an eight-hour workday; and sit for six hours of an eight-hour workday.

> He can occasionally push/pull or operation of any foot controls with the right lower extremity.

(Tr. at 20-21.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that Plaintiff's past relevant work exceeded the above RFC. (Tr. at 24.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 24-25.)

Plaintiff now contends that substantial evidence fails to support the ALJ's RFC assessment in three respects. First, Plaintiff argues that the ALJ failed to explain why Plaintiff's moderate limitations in concentration, persistence, and pace did not translate into further RFC limitations. Second, he contends that the ALJ was "playing doctor" when he asserted that Plaintiff exhibited a "full range of motion of his extremities" despite evidence to the contrary. And third, Plaintiff argues that the ALJ failed to account for manipulative limitations in feeling, handling, and fingering when assessing Plaintiff's RFC. (Pl.'s Br. [Doc. #11] at 7.) After a thorough review of the record, the Court agrees that substantial evidence fails to support the ALJ's omission of any limitations in handling, fingering, or feeling from the RFC. Because this issue requires remand, the Court need not address the additional matters raised by Plaintiff, as they may be addressed at the administrative hearing.

As recounted in the ALJ's decision, Plaintiff included "limited mobility in his hands" among his alleged impairments. However, at step two of the sequential analysis, the ALJ found that Plaintiff's limited mobility was a symptom rather than a medically determinable impairment. (Tr. at 19.) Therefore, the ALJ did not include any hand-related impairments

6

among Plaintiff's severe impairments at step two. (Tr. at 18.) When later discussing the basis for Plaintiff's RFC assessment, which includes no manipulative limitations, the ALJ again acknowledged Plaintiff's assertion that he was disabled, in part, due to limited mobility in both hands. (Tr. at 21.) Despite this assertion, the ALJ never mentions, let alone discusses, any of the medical evidence regarding Plaintiff's hand impairment, including x-rays, examinations, and diagnoses.

Notably, on June 2, 2016, less than a month prior to Plaintiff's alleged onset date, on examination his provider noted "[s]welling and tenderness in first and 2nd MCP joints on both hands bilaterally." (Tr. at 325.) The provider opined that Plaintiff suffered from arthritis and "some degree of [R]eynauds as well," which was resulting in low oxygen readings when using a monitor on his fingers. (Tr. at 323.) Several months later, on September 26, 2016, Plaintiff presented "with crush injury to [his] right index finger with [a] laceration on [his] distal finger pad." (Tr. at 369.) "He exhibit[ed] decreased range of motion, tenderness, bony tenderness, laceration and swelling" of his right hand (Tr. at 371), and on examination was also positive for joint swelling and arthalgias (joint pain) (Tr. at 370), and the provider ordered x-rays as well as sutures (Tr. at 372). The x-rays revealed "[s]oft tissue calcifications along the dorsal aspect of the distal long finger at the nail bed" along with "[m]arked chronic arthropathy of the long finger MCP joint," "[m]inimal chronic arthropathy of the index and small finger MCP joints," and "[p]ossible soft tissue swelling in the distal index and long fingers," with a differential diagnosis of "degenerative arthritis as well as chronic inflammatory arthropathy." (Tr. at 380-81.)

7

The record further indicates that Plaintiff suffered another acute injury to his right hand on June 25, 2017 "when a piece of plywood with an old nail fell onto [his] hand and punctured [it]" before "[dragging] across his hand, causing a laceration to the palmar aspect." (Tr. at 347.) On review of symptoms, he was positive for arthalgias (joint pain). (Tr. at 347.) A later visit for a shoulder injury in December 2018 noted a history of arthritis including a past medical history of arthritis in his hands, and on review of symptoms he was positive for joint pain. (Tr. at 354, 356.) The x-rays of his shoulder at that visit also reflected progressive arthritis of the right shoulder. (Tr. at 357.)

The ALJ did not reference any of the above evidence in his decision, and instead summarily concluded that Plaintiff's limited mobility in his hands was not a medically determinable impairment. (Tr. at 19.)[4] As a result, the ALJ's only discussion of Plaintiff's manipulative limitations came when considering the persuasiveness of the medical opinion evidence. The consultative examiner, Dr. Mitchell Bloom, considered Plaintiff's alleged hand limitations at length during his February 24, 2020 examination. Dr. Bloom first recounted Plaintiff's subjective complaints as follows:

> [Plaintiff] reports stiffness in both of his hands. He reports problems with strength and mobility in both of his hands due to fist fights he has had over the years. He is unable to pick up a gallon of milk with his right hand. He underwent an x-ray of his right hand which revealed no acute fracture. It also showed some soft tissue calcification in the distal long finger at the nail bed. It showed marked chronic arthropathy of the long finger of his MCP joint and "minimal chronic arthropathy of a few additional MCP joints."

---

[4] The ALJ did include some discussion regarding Plaintiff's right shoulder injury, but did not address the evidence regarding Plaintiffs' limited mobility in his hands.

8

(Tr. at 420.) Upon examination, Dr. Bloom noted that Plaintiff "lacks 10 degrees of extension in his right MCP joint of his middle finger" and "has moderate difficulty picking up a dime with his right hand [but] is able to pick up a dime with his left hand without difficulty." (Tr. at 423.) Dr. Bloom concluded that Plaintiff "is frequently able to handle finger and feel with left hand [and] is occasionally able to handle finger and feel with his right hand." (Tr. at 424.) As justification for these limitations, Dr. Bloom provided an express connection to his objective findings, explaining that Plaintiff

> has some difficulty picking up a dime with his right hand due to arthritis with chronic arthropathy involving his long finger of the MCP joint and other joints of his right hand on x-ray.

(Tr. at 424.)

The State agency medical consultants at the initial and reconsideration levels reviewed all of the above evidence, including Dr. Bloom's opinion. (See Tr. at 61, 66, 77.) Based on this evidence, both consultants opined that Plaintiff would require a limitation to frequent handling and fingering with his right hand. (Tr. at 65-66, 81-82.)

The ALJ considered these opinions—which constituted the only medical opinion evidence relating to Plaintiff's hands—but determined that the "manipulative limitations . . . identified [by both Dr. Bloom and the State agency consultants were] inconsistent with the medical evidence of record." (Tr. at 22, 23.) However, the ALJ again failed to cite or address any of the evidence of record noted above, and instead stated only that Plaintiff was able to "take care of activities without assistance," and that during the consultative examination Plaintiff "exhibited normal range of motion of his hands and fingers and full grip strength bilaterally." (Tr. at 22, 23.) As for the State agency opinions, the ALJ provided little, if any,

9

rationale for his finding of inconsistency, again noting only that Plaintiff "maintained good range of motion and good strength in his right upper extremity" despite degenerative changes in his right shoulder. (Tr. at 23.)

Notably, it appears that the ALJ may have incorrectly asserted that Plaintiff's range of motion was "normal" and grip strength was "good" or "full."[5] Even more importantly, nowhere in his discussion of the opinion evidence or elsewhere in the administrative decision does the ALJ mention the extensive radiographic findings relating to Plaintiff's hands, his multiple, documented injuries, his joint swelling and pain on multiple examinations, his differential diagnosis of "degenerative arthritis as well as chronic inflammatory arthropathy" of his hands, his limited range of motion in one or more fingers, and his functional limitations reflected in his inability to pick up a dime during the consultative examination. Indeed, the ALJ failed to connect at all Plaintiff's x-ray findings of "degenerative arthritis as well as chronic

---

[5] The Court notes that Dr. Bloom's consultative examination specifically stated that Plaintiff "lacks 10 degrees of extension in his right MCP joint of his middle finger" (Tr. at 423), and Dr. Bloom's flexion measurements also reflect a 9 degree limitation in the top joints of Plaintiff's fingers on his left hand (Tr. at 422). In addition, at the consultative examination, Dr. Bloom noted that Plaintiff's grip strength was "37.4 pounds in his right hand and 34.2 pounds in his left." (Tr. at 421.) The ALJ characterized that as "good strength," but Dr. Bloom did not include such a characterization, and there may be some question whether that grip strength is "good" and how that grip strength is inconsistent with the manipulative limitations recommended by Dr. Bloom. See, e.g., Herrmann v. Colvin, 772 F.3d 1110, 1112 (7th Cir. 2014); Donna R. M. v. Comm'r of Soc. Sec., No. 3:20-CV-542-MGG, 2021 WL 5881645, at *5 (N.D. Ind. Dec. 13, 2021); and Durham v. Berryhill, No. 2:17-cv-00385-JVB-JEM, 2019 WL 1375773, at *2 (N.D. Ind. Mar. 27, 2019) (all citing Virgil Mathiowetz et al., Grip and Pinch Strength: Normative Data for Adults, 66 ARCHIVES PHYSICAL MED. & REHAB. 69, 71 (1985) (finding the average grip strength for 60 to 64 year-old men to be 89.7 pounds in the right hand and 76.8 pounds in the left, and for men aged 55 to 59 to be 101.1 pounds in the right hand and 83.2 pounds in the left hand)); see also Abegg v. Saul, No. 2:18-CV-181-JEM, 2019 WL 3451474, at *2 (N.D. Ind. July 30, 2019) (citing James R. Roush et al., Normative Grip Strength Values in Males and Females, Ages 50 to 89 Years Old, 16-1 INTERNET J. ALLIED HEALTH SCIS. & PRAC. Art. 7 at 7 (2018) (finding the average grip strength for 60 to 64 year-old men to be 92.81 pounds in the right hand and 86.69 pounds in the left, and for men aged 55 to 59 to be 98.96 in the right hand and 90.08 pounds in the left hand)).

inflammatory arthropathy" with his complaints of "limited mobility in his hands." (Tr. at 19, 381.) In doing so, the ALJ neglected to properly consider whether degenerative arthritis and/or chronic inflammatory arthropathy constituted an additional severe impairment at step two of the sequential analysis, or, more importantly, whether such an impairment resulted in additional RFC limitations as posited in the relevant medical opinion evidence. In light of these errors, the Court simply cannot conclude that substantial evidence supports the ALJ's RFC assessment or the disability determination based upon it.

Of course, this Court is not determining now whether Plaintiff's hand impairment is a severe impairment and/or whether it would result in additional RFC limitations. These are determinations for the ALJ. However, because the ALJ did not address the medical evidence regarding Plaintiff's hand impairment, and because the ALJ summarily rejected all of the opinion evidence as inconsistent with the medical evidence, without having addressed or discussed that medical evidence, the Court cannot follow the ALJ's logical analysis, and remand is necessary so that these matters can be addressed by the ALJ in the first instance.[6]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). Defendant's Motion for Summary Judgment [Doc.

---

[6] The Court notes that the vocational expert testified that all of the jobs relied upon by the ALJ at step five of the analysis involved at least frequent handling. (Tr. at 51.) Because the ALJ failed to properly consider Plaintiff's ability to handle when assessing his RFC, and at least one medical opinion, that of Dr. Bloom, suggested greater limitation, the Court cannot conclude the ALJ's error was harmless, since resolution of this issue would require weighing the opinion evidence and then determining what RFC limitation would be appropriate.

#13] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #10] should be GRANTED to the extent set out herein.

This, the 22nd day of August, 2023.

/s/ Joi Elizabeth Peake
United States Magistrate Judge